758 A.2d 1139 (2000)
334 N.J. Super. 264
STATE of New Jersey, Plaintiff-Respondent,
v.
David HERNANDEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2000.
Decided September 28, 2000.
*1140 Edward T. Ehler, Glen Rock, argued the cause for defendant-appellant.
Michelle Katich, Assistant Prosecutor, argued the cause for respondent (Ronald S. Fava, Passaic County Prosecutor, attorney; Ms. Katich, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a trial by jury, defendant David Hernandez was convicted of third-degree possession of crack cocaine with intent to distribute, N.J.S.A. 2C:35-5b(3), and its possession with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7. He was, however, acquitted of simple possession of crack cocaine, N.J.S.A. 2C:35-10a(1). The court merged the conviction of possession with intent to distribute into the school-zone conviction, on which it sentenced defendant to an extended term of ten years subject to a five-year term of parole ineligibility together with mandatory statutory *1141 penalties. Defendant appeals, and we reverse and remand for a new trial because of the prejudicial error resulting from the improvident admission of other-crimes evidence barred by N.J.R.E. 404(b).
The charges against defendant arose out of a Paterson police surveillance of the corner of River Street and Sixth Avenue, a known high drug trafficking area, on February 11, 1997. According to his State's testimony, Officer Morales, through the use of binoculars at an undisclosed nearby surveillance point, observed defendant and his codefendant, George Gerardi, standing in front of a pool hall at the corner. Both were known to the officer by sight but not by name. Shortly after the start of the surveillance, the officer saw a woman approach the two men, and a conversation among the three of them ensued. The woman then handed currency to Gerardi and received from him an unidentified object which he had taken out of his sleeve. Gerardi then handed currency to defendant. Believing that they had witnessed a narcotics transaction, Morales and his partner immediately left their surveillance point and drove to the corner, arriving there within minutes. The woman they had seen had disappeared, but both Gerardi and defendant were still there. Both were immediately arrested and searched. Gerardi had several pieces of crack cocaine in his possession but no money, and defendant had no narcotics but $363 in cash. During the arrest, Morales noticed the woman he had earlier seen emerging from a hallway next to the pool hall. He arrested and searched her, finding neither money nor drugs on her person but a so-called crack pipe in her purse, which he said was warm. The woman was not charged in this indictment and did not testify at trial.
Gerardi and defendant were both named in each of the three counts of the indictment, which, however, contained no conspiracy count and which specified only February 11, 1997, as the date of the criminal conduct alleged. Gerardi, who has an extensive criminal record of both theft and drug crimes, testified for the State pursuant to a plea agreement whose terms included a prosecutorial recommendation of a three-year sentence subject to an eighteen-month parole ineligibility period and Gerardi's undertaking to testify against defendant. Gerardi testified not only to the events immediately prior to the transaction the police had believed they had observed, but also detailed his alleged business relationship with defendant during the two months preceding their arrest on February 11. He explained that in order to obtain money to support his heroin habit after his December 1996 release from incarceration, he had decided to try the drug trade rather than theft and had made an arrangement with defendant, whom he had known since childhood and whom he knew to be a drug dealer, whereby defendant would give him crack cocaine to sell at a commission rate of $30 for each $100 in sales. He further explained that defendant always remained in the immediate vicinity of the transaction in order to receive the sale proceeds from Gerardi before Gerardi had a chance to use them to purchase heroin for himself. He testified not only to about twenty selling stints he had conducted with defendant in this manner in the two months between his release and arrest, but also related an occasion during that period when he had accompanied defendant to New York City to purchase stock, explaining that defendant had bought a large piece of crack cocaine which he then cut up and packaged into $5 bags.[1] Gerardi was the only witness at trial other than Morales.
In challenging the ensuing conviction, defendant raises the following issues:
I. THE TRIAL COURT ERRED IN ADMITTING CERTAIN HIGHLY PREJUDICIAL PRIOR *1142 ACTS TESTIMONY AND/OR IN FAILING TO ADEQUATELY INSTRUCT THE JURY CONCERNING THE USE OF SUCH EVIDENCE AS REQUIRED BY N.J.R.E. 404.
II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL WHEN THE PROSECUTOR IN HIS OPENING STATEMENT INDICATED THAT HE DID NOT KNOW WHAT THE DEFENDANT WOULD SAY IN HIS DEFENSE, THUS VIOLATING DEFENDANT'S FIFTH AMENDMENT RIGHTS AND DENYING HIM A FAIR TRIAL.
III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL WHEN, CONTRARY TO N.J.R.E. 410, THE PROSECUTION ELICITED TESTIMONY FROM A PROSECUTION WITNESS CONCERNING PLEA OFFERS AND DISCUSSIONS RELATING TO DEFENDANT.
IV. THE JURY VERDICT IN THIS CASE WAS FATALLY INCONSISTENT AND MUST BE REVERSED.
V. THE CUMULATIVE EFFECT OF THE ERRORS BELOW CONCERNING ADMISSION OF PREJUDICIAL PRIOR ACTS EVIDENCE, IMPROPER PROSECUTORIAL COMMENT ON DEFENDANT'S RIGHT TO SILENCE AND EVIDENCE OF DEFENDANT'S PLEA OFFER, DENIED DEFENDANT A FAIR TRIAL.
We are persuaded of the merit of defendant's challenge to Gerardi's so-called other-crimes evidence. We have no doubt as to the admissibility of Gerardi's dealings with defendant during the hour or so prior to their arrest on February 11, 1997, and defendant does not indeed now argue to the contrary. Patently that testimony was admissible as probative of preparation and plan. The problem is the admissibility of Gerardi's testimony regarding his asserted course of dealing with defendant during the two months prior thereto.
N.J.R.E. 404(b) provides that:
Evidence of other crimes, wrongs or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
This rule of evidence, successor to former Evid. R. 55, is based on the common-law recognition of both the inordinate prejudice to the defendant inherent in other-crimes evidence and, at the same time, the utility of that evidence to the prosecution when it is fairly probative of defendant's guilt of the crime charged and not merely of his propensity to commit crime. Because of the "widespread agreement that other-crimes evidence has a unique tendency to turn a jury against the defendant...," State v. Stevens, 115 N.J. 289, 302, 558 A.2d 833 (1989), the compromise between the antagonistic interests that the Rule seeks to effect can be achieved only by the most delicate balancing. As Stevens, supra, at 303, 558 A.2d 833, explains, "[i]t is this inflammatory characteristic of other-crimes evidence that mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice." The tension between undue prejudice to the defendant and probative value to the State to prove a fact legitimately in issue induced the Supreme Court in State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992), to articulate further the conditions of admissibility of other-crimes evidence, the Court defining those conditions as follows:

*1143 1. The evidence of the other crime must be admissible as relevant to a material issue;
2. It must be similar in kind and reasonably close in time to the offense charged;
3. The evidence of the other crime must be clear and convincing; and
4. The probative value of the evidence must not be outweighed by its apparent prejudice.
See also State v. Covell, 157 N.J. 554, 564, 725 A.2d 675 (1999); State v. Marrero, 148 N.J. 469, 483, 691 A.2d 293 (1997); State v. Collier, 316 N.J.Super. 181, 192, 719 A.2d 1276 (App.Div.1998), aff'd o.b., 162 N.J. 27, 738 A.2d 369 (1999).
Gerardi's testimony regarding his activities during the two months preceding the arrest as defendant's alleged agent in the sale of crack cocaine, acting in the same manner as he and defendant allegedly did in the commission of the crimes with which they were charged, is certainly probative of defendant's propensity to have committed that crime. Whether it was also probative of a fact in issue directly involved in the proof of that crimewhether modus operandi, plan, preparation, intent, or constructive possessionis at best a close question. We are satisfied, however, that we need not address that question, namely the first prong of the Cofield test, because we are persuaded, even according required deference to the other-crimes ruling of the trial judge, see, e.g., State v. Marrero, supra, 148 N.J. at 483-484, 691 A.2d 293; State v. Erazo, 126 N.J. 112, 131, 594 A.2d 232 (1991), that Gerardi's testimony cannot meet the third prong, namely that the evidence is clear and convincing.
The meaning of "clear and convincing" evidence is well-settled. It is evidence that "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Matter of Purrazzella, 134 N.J. 228, 240, 633 A.2d 507 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J.Super. 156, 162, 165 A.2d 531 (App. Div.1960)). Or, as alternatively formulated, it is evidence that is "so clear, direct and weighty and convincing as to enable either a judge or jury [the factfinder] to come to a clear conviction, without hesitancy, of the precise facts in issue." Matter of Seaman, 133 N.J. 67, 74, 627 A.2d 106 (1993) (quoting Aiello v. Knoll Golf Club, op cit., supra). We have no doubt, and it has indeed been routinely held, that direct testimony of other crimes by law enforcement officers, victims and their families, disinterested witnesses, and even defendant's own admissions may qualify as clear and convincing evidence. See, e.g., State v. Covell, supra, 157 N.J. at 561, 725 A.2d 675 (defendant's admissions); State v. Stevens, supra, 115 N.J. at 295-296, 558 A.2d 833 (victims of prior crime); State v. Angoy, 329 N.J.Super. 79, 87, 746 A.2d 1046 (App.Div.2000) (victim's mother). We are satisfied, however, that the uncorroborated testimony of a codefendant testifying against defendant pursuant to a favorable plea agreement, and particularly the testimony of this codefendant, falls so far short of clear and convincing evidence as to mandate the exclusion of his other-crimes evidence.
We appreciate that extra-judicial statements to investigating police officers made by a participant in the crime that inculpate the defendant may be held to be sufficiently reliable to constitute substantively admissible prior inconsistent statements if the declarant later recants at trial. State v. Gross, 121 N.J. 18, 577 A.2d 814 (1990); State v. Gross, 121 N.J. 1, 577 A.2d 806 (1990). We are not dealing here, however, with reliability in that context. Rather, the issue that must be decided on a case by case basis is whether the State's evidence of prior crime that relies exclusively on the uncorroborated testimony of a codefendant is clear and convincing. Brief reference to Gerardi's testimony and particularly his cross-examination overwhelmingly demonstrates, in our view, its failure to reach the required standard. He admitted that he lies under *1144 oath with impunity. He explained his hostility to defendant for reasons over and above his having been caught while dealing for him.[2] He left no doubt that his testimony against defendant was a required term of the lenient plea bargain which carried only an eighteen-month parole ineligibility period and which he was most anxious to insure, his sentencing proceeding having been deferred until after this trial. The question thus is not whether a jury might have chosen nevertheless to credit all or part of his testimony. The question rather is whether a fact-finder could have "come to a clear conviction, without hesitancy, of the truth" of his testimony. We are persuaded that under the circumstances here and considering both the nature of the codefendant's interest and his avowed disregard for the truth, that question cannot be answered affirmatively.
In the end, the State's case rested upon the visually-aided observations of the police officer, which a jury might have found to be equivocal or at least short of proof of guilt beyond a reasonable doubt, and Gerardi's testimony. The bolstering of Gerardi's testimony respecting the events of the day in question by permitting him to relate his alleged involvement in defendant's alleged regular trade for the two months prior thereto could not but have unduly prejudiced defendant. When all is said and done, that evidence was still primarily predisposition evidence, namely that since defendant had used Gerardi as his agent to sell drugs in the past, it was likely that he had done so again on the day in question. And that is precisely the kind of evidence N.J.R.E. is intended to exclude.
There are several additional comments we must add. We are aware that when a condition of admissibility is in issue such as the four prongs of the Cofield test, a hearing is ordinarily required for determination of whether that condition has been met. N.J.R.E. 104(a). Although there was no such hearing here, we nevertheless regard the record as sufficiently clear to permit our review of the issue and our conclusion that it was not met. We are also constrained to note that the charge to the jury failed to meet the requirement of Cofield that the jury be specifically advised of the limited use it may make of the other-crimes evidence. Merely restating the rule of evidence and telling the jury that the evidence may be considered as proof of motive, state of mind, or modus operandi, without any further focus or explication, does not satisfy the mandate that the limiting instruction "be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere." State v. Cofield, supra, 127 N.J. 328, 341, 605 A.2d 230 (1992) (quoting State v. Stevens, supra, 115 N.J. at 304, 558 A.2d 833).
With respect to defendant's remaining arguments, we are satisfied that under the circumstances here and in view of the accomplice charge, the defendant's acquittal of the possession charge was not fatally or remediably inconsistent with his conviction of the charges of possession with intent to distribute. We are in full agreement with the rationale stated in State v. Ortiz, 253 N.J.Super. 239, 244-246, 601 A.2d 735 (App.Div.), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992), which rejected that contention in similar circumstances and which we find to be fully applicable here.
While we agree that the conduct of the prosecutor complained of by defendant was improper and unjustifiable, we are also satisfied that any potential prejudice was avoided by the trial judge's prompt *1145 and firm curative instructions. In any event, we need not consider those matters further in view of our remand for retrial on other grounds, and we are confident that there will be no repetition of that conduct on retrial. Nor need we consider the cumulative error issue.
The judgment of conviction appealed from is reversed, and we remand for a new trial in which the testimony of the named codefendant shall be limited to the events of February 11, 1997.
NOTES
[1] We note that while this testimony was not objected to at trial, defense counsel had raised an objection to it at a pretrial hearing, the judge then ruling that it would be admissible. We are satisfied that the in limine objection adequately preserved the issue for appeal. See Waterson v. General Motors Corp., 111 N.J. 238, 250, 544 A.2d 357 (1988).
[2] Gerardi testified that shortly after their arrest and while they were in custody, defendant asked him to "take the weight" by testifying that he, defendant, had had nothing to do with the transactions. In return he, defendant, promised to provide Gerardi's family with a weekly sum of $50 to $100 that he would give to Gerardi's girlfriend. Gerardi agreed. He believed, however, that defendant had reneged on the arrangement by failing to make any payments, and he was angered by that reneging.